REUBEN WENTWORTH *vs.* MANHATTAN MARKET COMPANY
& another.

Middlesex.    March 27, 1914. — May 23, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Equity Jurisdiction*, Damages. *Damages*, In equity. *Contract*, Performance and breach, Construction. *Evidence*, Competency.

Where, in a suit in equity seeking to enforce specifically a contract contained in a lease and agreement in writing by which the lessee agreed to erect on the plaintiff's land a building there described, it has been decided by this court that, by reason of the action of the parties caused by their different interpretations of the agreement as to the size and character of the required building, it would be inequitable to enforce the defendant's agreement specifically, and the case is sent to a master for the assessment of damages, the fact that the defendant was right as to the dimensions and character of the required building and that

the plaintiff was wrong in asking for a different one, does not absolve the defendant from his liability in damages for his failure to erect any building at all.

Where in a suit in equity to compel the specific performance of a contract this court has decided that the enforcement of specific performance would be inequitable and has ordered the assessment of damages, the court of equity in which the case is pending, having acquired jurisdiction of the case, will retain it for the assessment of damages, although the damages might have been recovered in an action at law.

Where in a contract in writing collateral to a lease the lessee has agreed to erect a certain building "in a manner satisfactory to" the lessor and "in a manner to the reasonable satisfaction of the" lessor, these expressions are to be construed to have the same meaning, and to mean that the work is to be done in such a way as reasonably ought to satisfy the lessor.

Upon the assessment of damages in a suit in equity brought by a lessor against his lessee for the breach of an agreement collateral to the lease to erect a certain building upon the leased premises, to be completed at a date just before the filing of the bill, which the lessee should have the right to occupy on payment of a stipulated rent until the termination of the lease eight years later, where the master has made a finding as to the reasonable cost of such a building at the time named for its completion, the amount thus found by him should be reduced so that the plaintiff may recover as damages only a sum equal to what would be the present worth of such a building subject to the lease.

Upon the assessment of damages in a suit in equity brought by a lessor against his lessee for the breach of an agreement collateral to the lease to erect a building upon the leased premises to be completed by a certain day, it appeared that the lease and agreement contained a provision that after the day fixed for such completion an increased rent should be paid in monthly instalments, that owing to a difference of opinion between the parties as to the proper interpretation of the provision in regard to the size and character of the building required to be built, no building was erected, that by a decision of this court it was determined that the defendant was right as to the kind of building required to be erected, but that he had committed a breach of the agreement by failing to erect a building of any kind. *Held*, that, as a part of the damages, the plaintiff was entitled to recover the increased rent from and after the date of the rescript of this court together with interest at the rate of six per cent per annum on each monthly instalment as it became due in case it remained unpaid.

In a suit in equity, at a hearing before a master for the assessment of damages for the failure of a lessee to erect a certain building on the leased premises as he had agreed to do by an agreement in writing collateral to the lease, upon the question of determining the reasonable cost of erecting such a building, it is proper for the master to exclude evidence offered by the defendant to show that before the time when the building was required to be completed the defendant received a bid in writing from a responsible person, which he did not accept, to erect the required building for a sum named, the master having found that the bid offered in evidence was based on a plan and specifications that contained errors and omissions.

BILL IN EQUITY, filed in the Superior Court on July 19, 1912, seeking, among other things, to have the defendants ordered to

perform specifically their agreement under a certain lease and contract in writing by erecting a building upon the leased premises, and by conveying in fee a certain right of way, and seeking also to have the defendants enjoined from maintaining a stable on the leased premises, and for damages.

By a rescript of this court issued on January 9, 1914, in accordance with a decision reported in 216 Mass. 374, it was ordered that the case be sent to a master to assess damages. The case accordingly was referred to Burton Payne Gray, Esquire, as master, to hear the parties and assess the damages in accordance with the opinion of this court. The master found that the erection of such a brick building as was required by the contract, without plastered walls, without a roof, and with a wooden floor, which would be suitable for carrying on the defendants' business and should be reasonably satisfactory to the plaintiff, would be $4,020.05; and, among other things, found that the defendants were liable to the plaintiff for rent at the rate of $2,500 a year from June 1, 1912, as reserved in the lease, with accrued interest on each monthly instalment as it became due under the lease.

The plaintiff filed the following exceptions to the master's report:

"1. To his ruling that the language of the lease and agreement calls for a brick building to be completed without a roof.

"2. To his ruling that the language of the lease and agreement calls for a brick building to be completed without plastered walls."

The defendants filed the following exceptions to the master's report:

"1. To the ruling or conclusion contained in the first paragraph of his findings, to the effect that there has been a breach of the contract on the part of the defendants, and to his failure to rule in that respect that whatever breach may have occurred was that of the plaintiff.

"2. To his ruling that the plaintiff is entitled to recover substantial damages.

"3. To his ruling that the measure of damages is such sum of money as it would have cost to erect the brick building in question on or before June 1, 1912, as provided in the lease and agreement.

"4. To his refusal to rule that if the cost of the building is the measure of damages, it should be reduced by such sum as would

represent reasonable interest on the amount of the award from the date of payment to the termination of the lease.

"5. To his ruling that the language of the lease and agreement calls for a wooden floor in the building and for suitable finish about the door and windows.

"6. To his exclusion of the offer of proof made by the defendants as to the bid for erecting the building for the sum of $3,007.

"7. To his refusal to find and rule that this bid was the limit of the defendants' liability for damages, so far as the cost of the building is concerned.

"8. To the method by which the master found, as stated in his report, that it would cost the sum of $4,020.05 to erect the building in question.

"9. To his admission of the letter of January 26, 1914.

"10. To his ruling that the defendants are liable for rent at the rate of $2,500 per annum from June 1, 1912, as reserved in the lease, with accrued interest on each monthly instalment as it became due under the lease.

"11. To his ruling that the defendants are liable for rent from June 1, 1912, at the rate of $1,000 per year, and to the method by which he arrived at this figure.

"12. To his ruling that, if the defendants are liable for rent only at the rate of $700 per year, they are also liable for any interest thereon."

The case came on to be heard before *Jenney*, J., and, at the request of the parties, was reserved by him for determination by this court upon the master's report on the assessment of damages and the exceptions of both parties thereto, together with the record of the previous appeal.

*H. T. Richardson*, for the defendants.

*E. A. Whitman*, for the plaintiff.

CROSBY, J. This case has been considered previously by this court. *Wentworth* v. *Manhattan Market Co.* 216 Mass. 374. After the rescript of this court and in accordance therewith, the case was recommitted to the master, who assessed the damages to be awarded to the plaintiff. At the request of both parties the case was reserved by a judge of the Superior Court upon the master's report upon the assessment of damages and the exceptions of both

parties thereto, together with the record of the previous appeal; such decree to be entered as law and justice may require.

The defendant contends that it is liable only for nominal damages for failure to erect the building upon the premises because of the language contained in the previous opinion (216 Mass. 380): "The plaintiff has refused to allow the defendant to erect one [a building] such as the contract provided for." The record shows that the plaintiff and the defendant were not in accord as to the size or character of the building that was to be erected. In other words, they differed as to the correct interpretation of the lease and contract which they had entered into. This court has decided that the defendant was correct in its interpretation of the agreement so far as it related to the dimensions and character of the proposed building. This does not, however, release or excuse the defendant from a failure to perform its contract, or, in the event of such failure, from responding in damages to the plaintiff. The language quoted from the opinion, that "the plaintiff has refused to allow the defendant to erect one such as the contract provided for," cannot be construed as meaning anything more than that the plaintiff refused to agree to the defendant's interpretation of the contract. The defendant has been in full possession and control of the premises ever since June 1, 1910, and there is nothing to show that it might not have proceeded with the construction of such a building as was called for by the agreement, and have fully completed it on or before June 1, 1912. It would be inequitable for the defendant to be relieved from liability for failure to perform the contract which it admits it entered into. Especially is this true in view of the following finding of the master: "That the defendant, after it secured a renewal of its lease of the quarters now occupied by it, which was during the two year period, at no time considered the erection of any new structure upon the premises leased by the plaintiff until after a demand from the plaintiff in the spring of 1912 for the erection of the building called for in the lease and agreement. The defendant then took up the question of the new construction, but went only so far as to determine what was the simplest building that could be constructed to satisfy its obligation under its covenant, and except for that there was no plan at any time to erect any building upon the plaintiff's land."

We are of opinion that the plaintiff is entitled to damages (1) by

reason of the failure of the defendant to erect the building, and (2) for failure to pay the rent stipulated in the lease. The plaintiff undoubtedly has a remedy at law for the recovery of whatever sums may be due him as rent under the lease, but as the bill is brought among other things to compel the specific performance of the contract, and as the court in the exercise of its discretion has determined that specific performance ought not to be ordered, but has determined that the proper relief to be awarded the plaintiff is that of damages, we see no reason why the rule in chancery practice in this Commonwealth should not be followed in this case and jurisdiction retained for the assessment of damages although the relief of specific performance has been refused. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 47. *Nickerson* v. *Bridges*, 216 Mass. 416, 421.

We are of opinion that the rulings and findings of the master under the paragraphs of his report numbered one and two are correct. The written agreement for the construction and finish of different parts of the building recites that the same is to be done "in a manner satisfactory to said Wentworth" and "in a manner to the reasonable satisfaction of the said Wentworth." These different forms of expression are to be construed as having the same meaning. They are to be considered as agreements to do the work in such a way as reasonably ought to satisfy the plaintiff. *Handy* v. *Bliss*, 204 Mass. 513, 519, 520. It seems plain that the defendant was not required to put a roof on the brick building upon which was to have been placed the three story wooden building. Nor can we say that the findings of the master that the building should have a wooden floor, that the walls were not to be plastered, and the other findings, including the finding that such a building would cost $4,020.05, were plainly wrong. The finding as to the reasonable cost of the building is based upon the cost of such building before June 1, 1912, when, by the terms of the agreement, it was to have been completed, but as the defendant was entitled to the use and occupancy of the building, had it been erected, until June 1, 1920, the date when the lease, unless renewed, would expire, the plaintiff is entitled to recover as damages only a sum equal to the present worth of the building. That is to say, the fair cost of the building should be reduced to such a sum as with interest at six per cent per annum will produce the amount at the end of the term.

We are of opinion that in the absence of any evidence to the contrary, six per cent per annum, which is the legal rate of interest fixed by statute where there is no agreement for a different rate, would be reasonable interest in this case. R. L. c. 73, § 3.

It is to be observed that there is no evidence before the court as to the extent, if any, that the building would have depreciated in value at the time of the termination of the lease. No rent has been paid since June 1, 1912, and the question arises as to what sum should be paid from and after that date. The lease and agreement provided that the building to be erected upon the premises should be completed within two years from June 1, 1910, and that from and after June 1, 1912, the increased rental at the rate of $2,500 should be in force. The evidence shows however that owing to differences between the parties as to the size, location and character of the building, no building has been erected, and the controversy between the parties as to the proper interpretation of the lease and agreement recently has been decided by the rescript filed in this case on January 9, 1914. The report of the master shows that the defendant seasonably before June 1, 1912, tendered performance by offering to erect such a building as the contract called for, but that the plaintiff refused to accept such a building.

Under these circumstances, we are of opinion that the rent reserved at the rate of $700 a year from June 1, 1910, until the date of the rescript, is due and payable, together with interest at six per cent on each monthly instalment as it became due under the lease, and that from and after the date of the rescript for the remainder of the term of the lease the plaintiff is entitled to receive the yearly rental of $2,500, payable in equal monthly payments in accordance with the lease, with interest at six per cent on each monthly instalment as it became due. It follows that the plaintiff's exceptions to the master's report must be overruled.

The defendant's exceptions have been largely disposed of by what has been said. The master was justified in ruling that there had been a breach of the contract on the part of the defendant. This follows from the previous opinion in this case. The defendant's first exception therefore must be overruled. As the plaintiff is entitled to recover substantial damages, the second exception is overruled. The third, fourth and tenth exceptions, for the

reasons already stated, must be sustained. The eleventh and twelfth have become immaterial. The master's finding that the defendant should lay a wooden floor and that there should be suitable finish about the doors and windows cannot be found to have been clearly wrong. Accordingly the fifth exception must be overruled. The eighth exception is overruled, as it does not appear what method the master adopted in making his finding as to the cost of the building, nor is the evidence before us upon which this finding was based. The letter of January 26, 1914, from the defendant's counsel to the plaintiff's counsel, would seem to have been immaterial upon the question of damages, which was the only issue before the master, but we fail to see how the defendant could have been harmed even if the letter was admitted wrongly. Accordingly this exception must be overruled.

The defendant's sixth and seventh exceptions relate to the exclusion of the defendant's offer to show that in the spring of 1912 it had a *bona fide* bid in writing from a responsible person to erect the building required for $3,007. The master found that the bid which the defendant offered in evidence was based upon a certain plan and specifications prepared by the defendant's architect and contained certain errors and omissions.

We are of opinion that this evidence was incompetent. An unaccepted bid had no tendency to show the reasonable cost of the building in 1912. Accordingly the defendant's sixth and seventh exceptions must be overruled. *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223, 233. *Doherty* v. *Hill*, 144 Mass. 465, 469. *Wood* v. *Firemen's Fire Ins. Co.* 126 Mass. 316, 319. *Dickenson* v. *Fitchburg*, 13 Gray, 546, 554.

A final decree in favor of the plaintiff in accordance with the foregoing, with costs, is to be entered; its form to be settled in the Superior Court.

*Ordered accordingly.*