. In re Estate of Frank P. Graves, Deceased.
William N. Brady, Executor, Appellee, v. W. Worth
Bean, Appellant.

Gen. No. 25,531.

1. EXECUTORS AND ADMINISTRATORS—*burden of establishing il-legality of consideration for claim.* The burden of establishing that the consideration upon which is based a claim against the estate of a decedent was illegal is upon the estate.

2. CORPORATIONS—*illegality of contract between stockholders involving withdrawal of opposition to corporate action.* Where the consideration for the promise of deceased to pay to a claimant against his estate a portion of an amount which deceased was to collect as a creditor from a corporation in which both were stock-holders was the withdrawal by claimant of his opposition to the sale of the assets of the corporation, such consideration was contrary to public policy and void, it being admitted that such contract was not known of or assented to by the other stockholders, and the agreement will not be enforced.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed June 18, 1921.

COULTER & JEFFREYS, for appellant.

WILLIAM N. BRADY, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The appellant, Bean, filed a claim in the probate court of Cook county against the estate of Frank P. Graves, deceased, for the sum of $2,800 and, after hearing, the claim was allowed for $2,043.36. The estate perfected an appeal from the order allowing the claim, to the circuit court of Cook county, where the matter was heard by the court without a jury, whereupon the court made a finding for the

estate and against the contentions of the appellant and entered a judgment against him for costs. From that finding and judgment, appellant has perfected this appeal.

The deceased, Graves, and the appellant, Bean, were stockholders in a corporation known as the American Tool Works. From affidavits received in evidence it appears that they were both present at a meeting of the board of directors of the corporation on or about September 17, 1914, at which time a motion was made to sell the assets of the corporation to another corporation known as the Upton Machine Company, at certain specified terms. Appellant objected to such action being taken, for the reason that it would wipe out his interest entirely, it appearing that the consideration for which it was proposed to make such a sale would be only sufficient to satisfy the claims of creditors. The deceased, Graves, in addition to being a stockholder in the American Tool Works, was a creditor to a considerable extent. The meeting of the board of directors referred to was adjourned without action being taken on the question of the proposed sale of the company's assets, in order to give appellant an opportunity to look into the company's affairs. About October 1 of the same year, another meeting of the board of directors was held. It appears that the deceased was present at that meeting but appellant was not. When the question of this sale again arose, inquiry was made as to appellant's attitude in the matter and deceased stated that he had gone over the matter with him, "and that he had satisfied Mr. Bean," and that he would "make no further objection." Following this, the sale was apparently approved by the board of directors and was carried out. In one of the affidavits referred to the affiant further set forth that about a month after the meeting of the board of directors, to which reference has last been made, the deceased stated to him

that he had made a settlement with appellant in the
American Tool Works matter whereby he was to
receive certain stocks and bonds the same as deceased.
There were also introduced in evidence two letters
from the deceased to appellant "relating to the ad-
justment between us, of the American Tool Works
matter," and setting forth "what our respective in-
terests are." The letters then proceeded to state that,
according to the agreement referred to, the proceeds
the deceased was to receive on his claim as a creditor
against the American Tool Works were to be divided
between the deceased, the appellant and a third stock-
holder of the company, in certain specified propor-
tions which were set forth and which represented
their respective interests as shown by their stock-
holdings in and accounts with the company and the
deceased further stated that he would hold the pro-
ceeds received on his claim in trust for appellant, the
third stockholder referred to and himself.

It appears from one of the letters of the deceased
in evidence that his claim against the American Tool
Works amounted to $47,500 and from the other letter
it appears that at the time the letter was written he
had received $11,800 in stock and $11,800 in bonds
towards the payment of his claim and he expected
to receive enough more from the trustee in charge
of the company's affairs to make a total payment of
$28,500, in stock and bonds, in liquidation of his claim.

It further appears from the evidence that prior to
his death, the deceased had used the stock he received,
as collateral security for a personal loan and ultimately
the stock was used to liquidate the loan, and further
that the estate had possessed the bonds referred to,
worth $11,800, and that it had received the value of
those bonds in cash, at par.

It was admitted that there were other stockholders
of the American Tool Works at the time the agree-
ment between the deceased and appellant was entered

into but that they were not parties to it and knew nothing about it. The appellant never received anything from the deceased pursuant to the agreement that had been entered into.

In support of the judgment of the circuit court, appealed from, the appellee estate contends that the agreement made by the deceased to pay appellant a portion of the proceeds he was to receive from the American Tool Works in payment of his claim cannot be enforced because it is without an adequate and legal consideration, for the purported consideration was the promise of appellant to take certain action or refrain from taking certain action as a director of the company; that, as a director, appellant was legally obligated to act for the best interests of the company and an agreement to do what one is already legally obligated to do is not such consideration as will support a contract. This contention does not seem applicable to the facts involved, for it is clear from the record that although appellant was a stockholder in the American Tool Works, he was not a director.

But the appellee contends further, in support of this judgment, that the contract on which appellant's claim is based is void, even though he was merely a stockholder and not a director of the company. The record shows that the deceased and the claimant, both being stockholders but apparently not directors, were present at a meeting of the board of directors held about the middle of September, 1914, and that a motion was made at this meeting to sell the assets of the company to the Upton Machine Company and that the claimant strongly objected to such action, giving as his reason therefor the fact that in the event of such a sale his interests would be wiped out. It further appears that the directors thereupon agreed to give the claimant an opportunity to look into the company's affairs. Another meeting of the directors was held early in October and at this meeting inquiry was

made as to whether the claimant had made his investigation. It seems that the claimant 'was not present at this meeting but that the deceased was and in reply to the inquiry just mentioned the latter replied that he had seen the claimant and gone over the matter with him and that he had ''satisfied him,'' and the directors were advised that the claimant would make no further objection to the sale of the property. It appears, further, that in the latter part of October and shortly after the meeting of the board of directors referred to, the deceased stated to one Collier, another stockholder of the company, that he had made a ''settlement'' with the claimant in the American Tool Works matter, whereby the latter was to receive certain stocks and bonds the same as the deceased and Collier. There is also in the record a letter from the deceased to the claimant, referring to ''a memorandum relating to the adjustment between us of the American Tool Works matter,'' relative to which he is writing ''to show what our respective interests are.'' The burden of establishing the fact that the consideration upon which the claimant bases his claim was illegal was upon the appellee estate, and the claimant contends that it failed to establish the fact by a clear preponderance of the evidence. In our opinion that contention cannot be upheld. It would seem from the evidence to which we have referred that the consideration of the promise of the deceased to pay the claimant a portion of the amount which the deceased was to collect from the American Tool Works, as a creditor, was the withdrawal by the claimant of his opposition to the sale of its assets by the American Tool Works. While the evidence is not direct, there is exceedingly strong inference that that was the situation, and there is no evidence in the record to the contrary. Appellant being a stockholder in the company, any contract entered into by him whereby he was to receive a personal

consideration in return for either his action or his inaction in a matter such as a sale of all the company's assets, involving, as it did, the interests of all the stockholders, was contrary to public policy and void, it being admitted that such contract was not known by or assented to by the other stockholders. The purpose and effect of the contract was apparently to influence appellant, in his decision of a question affecting the rights and interests of his associate stockholders, by a consideration which was foreign to those rights and interests and would be likely to induce him to disregard the consideration he owed them and the contract must, therefore, be regarded as a fraud upon them. Such an agreement will not be enforced, as being against public policy. *Teich v. Kaufman*, 174 Ill. App. 306; *Guernsey v. Cook*, 120 Mass. 501; *Palmbaum v. Magulsky*, 217 Mass. 306.

We find no error in the record and therefore the judgment of the circuit court is affirmed.

*Affirmed.*

TAYLOR, P. J., and O'CONNOR, J., concur.