LEOMINSTER FUEL COMPANY *vs.* MICHAEL R. SCANLON
& another.

Worcester.     September 25, 1922. — November 27, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant,* Premises leased, Repair of plate glass window, Construction of lease. *Words,* "Unavoidable casualty."

A lease of "room on the first floor of" a certain building "with the lavatory and conveniences connected or enjoyed therewith, and the use of the corridors and halls leading thereto, and the passenger elevator provided for the use of the tenants in said building, together with steam heat for said offices and building" includes as a part of the demised premises, where there is no provision in the lease to the contrary, a plate glass window of considerable size next to the sidewalk, which formed a part of the outer wall of the room and admitted light to no other part of the building.

In the absence of any agreement in the lease requiring the landlord to repair the plate glass window above described, the obligation to repair it rested upon the tenant.

The breaking of the plate glass window above described through accident or negligence of a third person, for whose conduct neither the landlord nor the tenant was responsible, was not an "unavoidable casualty" within the meaning of a provision of the lease requiring the tenant to "keep the premises in tenantable repair, damage by fire, unavoidable casualty and usual wear and tear alone excepted."

CONTRACT for $200, paid by the plaintiff for replacing a plate glass window in premises leased to it by the defendants and broken by a third party.     Writ dated February 16, 1921.

In the Superior Court, the action was heard by *Qua,* J., without a jury.     Material evidence is described in the opinion.     The judge denied requests of the plaintiff for rulings, raising the questions described in the opinion, and found for the defendants; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*G. K. Hudson & G. M. Barrows,* for the plaintiff.

*H. C. Bascom,* for the defendants.

RUGG, C.J.   This is an action of contract wherein the plaintiff seeks to recover the expenses of replacing a plate glass window broken by a third person, who ran into it from the street.   The window was on the first floor next to the sidewalk, formed a part

of the outer wall of the plaintiff's office, and admitted light to no other part of the building. The plaintiff was tenant of .the defendants under a lease for a term of years, which described the demised premises in these words: "The landlord lets and the tenant hires 1 room on the first floor of the building No. 8 on Mechanic Street in the City of Leominster, with the lavatory and conveniences connected or enjoyed therewith, and the use of the corridors and halls leading thereto, and the passenger elevator provided for the use of the tenants in said building, together with steam heat for said offices and building." Amongst other covenants of the lessee was this: "To keep the premises in tenantable repair, damage by fire, unavoidable casualty and usual wear and tear alone excepted." It was also agreed that the lessee should not affix, paint or inscribe any sign, advertisement or notice upon any part of the outside or inside of the building except by consent of the lessors. The lessors covenanted "To keep the premises other than said offices, including the stairways, halls and elevator, in good repair," "To insure the premises and reinstate the same in case of damage by fire."

The lessors refused after demand by the lessee to replace the window, whereupon the latter did it at its own expense and brings this action to recover the cost.

It is settled that a lease of a floor or story of a building includes its outer walls. *Lowell* v. *Strahan*, 145 Mass. 1. *Conahan* v. *Fisher*, 233 Mass. 234, 236. In the former case it was said at page 8 that the words "floor" or "story" "differ somewhat from the word 'room.' . . . The word 'room' includes a description of the perpendicular as well as of the horizontal planes which bound the parcel of the house described by it, and excludes the outside of lateral walls, at least when they constitute the walls of another room, as clearly as the words 'first floor' exclude the flooring of the story above it." That statement does not reach to the facts of the case at bar.

Apparently in the case at bar the window was of considerable size, upon the street floor, adjacent to the sidewalk. It was essential in order to light the room leased. Its exterior surface was as indispensable to this end as its interior surface or its transparent substance. It would have been incompatible with the purposes of the lease and the valuable use of the room by the

tenant for the landlord to have any right of control over the exterior of the window. The cleaning of both its outside and inside (in the absence of express agreement) would naturally be under the control of the tenant. It is manifest that the tenant of a room possesses the incidental right to use and decorate the interior walls, floor and ceiling in accordance with his own taste and needs so long as he does no harm to them. His lease covers not merely the cubical space bounded by the inner planes of walls, floor and ceiling. Such a tenancy implies the right to attach carpets or rugs to the floor. In former days it included the right to set up a stove and connect with the chimney, thus involving a certain use of the wall. Ordinarily pictures may be hung. Painting and papering are within the natural uses by the tenant of a room. One of the uses of a tenant of a room for business naturally might be the display of his name and occupation on his window. These factors lead to the conclusion that, *prima facie* and in the absence of agreement, the lease in the case at bar included the whole of the plate glass window. This is the implication of our own decisions already cited and is simply an extension of their principle. It is in harmony with the underlying principles of the law of landlord and tenant. It was expressly so held in *Hope Brothers, Ltd.* v. *Cowan,* [1913] 2 Ch. 312, and *Goldfoot* v. *Welch,* [1914] 1 Ch. 213.

The liability of the landlord in *Woodman* v. *Shepard,* 238 Mass. 196, rested upon the fact that the sign which caused the injury was fastened in part at least to portions of the building in his exclusive control.

Since the plate glass window was included within the lease, the obligation to repair rested upon the tenant and not upon the landlord in the absence of some contract covering the subject. "It is a familiar rule of law, that, in the absence of an express agreement to the contrary, the owner of a tenement let to a tenant is not bound to make repairs upon it during the term." *Szathmary* v. *Adams,* 166 Mass. 145, 146. *Fiorntino* v. *Mason,* 233 Mass. 451. Cases like *Kirby* v. *Boylston Market Association,* 14 Gray, 249, and *Milford* v. *Holbrook,* 9 Allen, 17, are not applicable.

The breaking of the window through accident or negligence by an outsider, for whose conduct neither the landlord nor the tenant

was responsible, was not an "unavoidable casualty" within the meaning of those words in the lease exonerating the tenant from keeping the premises in tenantable repair. *Welles* v. *Castles*, 3 Gray, 323. *French* v. *Pirnie*, 240 Mass. 489.

It follows that the defendant is under no liability to the plaintiff for replacing the window. *Bigelow* v. *Collamore*, 5 Cush. 226, 231. *Kramer* v. *Cook*, 7 Gray, 550. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402, 407. Cases like *Stockwell* v. *Hunter*, 11 Met. 448, and *Shawmut National Bank* v. *Boston*, 118 Mass. 125, have no pertinency in this connection.

*Exceptions overruled.*